PATTERSON v. BAXLEY.

1. Under summons to renew an execution, an order may be passed reviving the judgment.
2. Where judgment for foreclosure, entered prior to the Code, authorized application for execution to be made when any deficiency shall become due, but the report on sales stating the amount of such deficiency was not confirmed until after the passage of the Code, and execution was afterwards issued, the duration of the judgment is governed by the old law and not by the provisions of the Code.
3. Where a judgment was entered on June 30, 1869, against principals and sureties, its lien continued until it was presumed to be paid by the lapse of twenty years; but the judgment having been paid in full in 1874 by one of the sureties, this presumption was rebutted, and the surety who made the payment was entitled at any time within twenty years thereafter to have the judgment revived against the principals.
4. Under the act which declares that no judgment shall have a lien for more than twenty years, unless a note of some payment on account be filed with the record of such judgment, payments made by a defendant, who was a surety, to the sheriff, and by him entered in his books, are sufficient to continue the lien of such judgment against the principal debtors in favor of such paying surety for a further period of twenty years.

Before KERSHAW, J., Barnwell, November, 1889.

The opinion fully states the case.

*Messrs. Bates & Simms*, for appellant.

*Mr. J. J. Brown*, contra.

October 2, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The defendants together purchased a tract of land at commissioner's sale for $1,710, and to secure the payment of the purchase money, gave to the plaintiff, as commissioner, a bond payable in three annual instalments of $570 each, with J. C. Holley, W. M. Davis, and R. F. Aaron as sureties, and a mortgage of the premises to secure the purchase money. The first instalment became due on December 3, 1867, the second December 3, 1868, and the third on December 3, 1869. Default was made as to the payment of the first two instalments,

and on April 7, 1869, a bill for foreclosure was filed in the then
Court of Equity.   On June 30, 1869, an order of reference was
made, and on the same day the clerk of the court made a report
as to the amount due on the bond, including interest to June 30,
1869, viz.: $1.205.54, with interest from June 30, 1868, to be-
come due on December 3, 1869.

Thereupon a decree was rendered, directing the land to be sold
on salesday of November, 1869.   The decree further directed as
follows : "That if the money arising from said sale be insufficient
to pay the amount reported to be due, with interest and costs and
expenses of sale as aforesaid, the complainant may have the pro-
cess of the court to collect the amount of said deficiency with
interest ; and in case the amount reported as actually due, with
interest and costs of suit, shall be paid before such sale, it is fur-
ther ordered, that the complainant shall be at liberty at any time
hereafter, when the 3rd instalment of the land and interest there-
on shall become due, to go before the clerk, acting as master, and
procure a report of the amount which shall then be due thereon,
to the end that upon the coming in and confirmation of such
report (which may be procured at chambers), an order may be
made for the sale of said premises to satisfy the amount which
shall then be due, with interest and costs of said report and sale ;
and in case said premises shall be sold under this decree, and
shall not produce sufficient to satisfy the amount so reported
as secured and unpaid (to wit, the whole amount of the bond,
including the third instalment and interest and costs), it is fur-
ther *ordered, that the claimant be at liberty at any time there-
after when any such deficiency shall have become due according
to the conditions of the bond, to apply to this court for an execu-
tion against all the defendants to collect the amount which shall
be due thereon,"* &c.

The land was sold under the decree on salesday of November,
1869, and the clerk reported "that the land was sold on the fol-
lowing terms : cash enough to pay the costs and expenses of the
suit, and also one-third of the purchase money, the balance on a
credit until March 1, 1870.   ·

| | | |
|---|---:|---:|
| L. F. Dicks purchased, | | $1,325 00 |
| Cash payment, | $441 66 | |
| Costs, | 138 00 | 579 66 |

$745 34

This report was confirmed by the Circuit Judge.[1] No final judgment was ever entered up for any deficiency. Application was made for execution for deficiency, and execution issued on the 9th of May, 1870. The application recites the entire proceedings for foreclosure, as follows: "The net proceeds of sale left a deficiency upon the sum reported as due of $47.48, and the 3rd instalment, with interest to December 3rd, 1869, also remaining due upon the decree December 3rd, 1869, was $634.38, and for this sum with interest from December 3, 1869, execution is applied for, and the decree accordingly enrolled," &c. The following entries appear on the sheriff's books: "October 5, 1870. Received by sale of J. J. C. Holley's land, $440, in part of this case," signed by N. G. W. Walker, as sheriff. "November 9, 1870. Received from J. C. Holley $307.59, balance in full," signed as above. "January 20, 1874. Received by money collected by the defendant (J. C. Holley) $7.80, in full of this case."

On October 15, 1889, J. C. Holley, the surety, who made the above payments, filed a summons to renew the execution against the defendants, W. M. and B. F. Baxley, for the sum so paid in satisfaction of said decree and interest thereon from the date of payment. . This summons to renew the execution was served on the defendants on October 15, 1889. To this summons to revive the defendants made vigorous defence, but Judge Kershaw granted an order "that the surety, J. C. Holley, having paid in behalf of his principals herein the sum of $757.09, as appears from the sheriff's execution book (1870), have leave to issue execution for the said amount, with interest on same from date of payment, amounting to $1,766.09," &c.

From this decree the defendants appeal to this court, excepting for the following alleged errors of law: "1st. In renewing execution on a decree in foreclosure for a deficiency after sale of

---

[1] March 7, 1870.—REPORTER.

the mortgaged property, when no judgment had ever been entered up for such a deficiency.   2nd.  In renewing execution upon a decree when more than twenty years had elapsed since the same was filed.   3rd.  Because the sale of the land under the decree was not confirmed until March 7, 1870, and the deficiency could not have been judicially determined before that date ; hence the judgment, if any, came under that class which the act of 1885 required to be revived within two years after the passage of that act, and the same not being so revived, his honor erred in renewing the execution.   4th.  In renewing execution upon a judgment which had become dormant without reviving the judgment."

As to the last exception, alleging that the judgment, being dormant, could not be revived under process "to renew the execution."   Upon this subject it cannot be necessary to do more than refer to the decided cases in our own court, viz.: *Adams* v. *Richardson*, 30 S. C., 215 ;[1] *Ex parte Witte Bros.*, 32 S. C., 226 ; *Wood* v. *Milling, Ibid.*, 378 ; and *Leitner* v. *Metz, Ibid.*, 383.

Exceptions 1 and 3 make the point that no judgment for the deficiency was "entered" until after the sale was confirmed, March 7, 1870 ; that then for the first time the deficiency was officially ascertained, and therefore that adjudication falls under the class of judgments which were entered after March 1, 1870, and before the 25th of November, 1873, and therefore had no lien at all until it was acquired in the manner prescribed by the statute, which not having been done, the judge erred in renewing the execution.   It is true, the deficiency was not ascertained and confirmed until March 7, 1870, which was "between the first day of March, 1870, and the 25th day of November, 1873." But the decree of foreclosure had been "entered" on June 30, 1869, and the land sold on salesday in November following, and, as it seems to us, the whole matter was adjudged by the original decree of foreclosure (except the mere ascertainment), in the following words : "It is further ordered, that the complainant be at liberty at any time thereafter, when any such deficiency shall have become due according to the bond, to apply to the court for

---

[1] See particularly same case in 32 S. C., 139.—REPORTER.

an execution against all the defendants to collect the amount which shall be due thereon." This was done precisely as directed, and the unpaid balance collected without objection out of the property of the surety, J. C. Holley, who is now endeavoring to revive the judgment against the principal defendants in order to reimburse himself the amount paid by him as surety. See *Freer* v. *Tupper*, 21 S. C., 81.

Assuming, then, that the decree of foreclosure included judgment for the deficiency, it was "entered" before the Code was adopted (1870), and therefore was subject to no statute of limitation as such. It had a lien, which was subject, however, to the rule raising an artificial presumption of payment in twenty years. The judgment was entered June 30, 1869, and the summons to renew the execution was lodged on October 18, 1889—something over twenty years thereafter. So that the presumption of payment would arise, unless there was something in the case to show that the debt was still acknowledged to be in existence at a period short of the twenty years required. Was there such a fact or circumstance in this case? We think there was. Section 1831 of the General Statutes (act of 1879) provides as follows: "No mortgage, or deed having the effect of a mortgage, no judgment, decree, or other lien upon real estate, shall constitute a lien upon any real estate after the lapse of twenty years from the date of the creation of the same: provided, that if the holder of any such lien or liens as aforesaid shall, at any time during the continuance of such lien, cause to be recorded upon the record of such mortgage, deed having the effect of such mortgage, or shall file with the record of such judgment, decree, or other lien, a note of some payment on account, or some written acknowledgment of the debt secured thereby, with the date of such payment or acknowledgment, such mortgage, deed having the effect of a mortgage, judgment, decree, or other lien, shall be and continue to be a lien for twenty years from the date of the record of any such payment on account or acknowledgment," &c.

It appears in writing from the record in the sheriff's office, that "payments" were made to him officially on the judgment for the deficiency at three separate times, viz., January 20, 1870; October 3, 1870; and November 7, 1870. From this last pay-

ment to October 18, 1889, when the summons to renew was filed, was less than twenty years. We cannot doubt that the receipts in writing on the record are a substantial compliance with the new rule of evidence created by the act of 1879, *supra*, which requires "a note of some payment on account, or some written acknowledgment of the debt secured thereby," &c. We think the summons to renew the execution was filed within time—within twenty years from the last "payment on account" in the record.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

